## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CRIMINAL ACTION** |
| v. | ) | |
| | ) | No. 06-20021-12-KHV |
| ALBERTO PEREZ-JACOME, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## AMENDED MEMORANDUM AND ORDER

On May 26, 2006, a grand jury returned a 21-count indictment which in part charged Alberto Perez-Jacome with (1) conspiracy to possess marijuana, more than 50 grams of methamphetamine and more than 500 grams of cocaine with intent to distribute; (2) distributing more than five grams of methamphetamine; (3) possessing 50 grams or more of methamphetamine with intent to distribute; (4) possessing 500 grams or more of cocaine with intent to distribute; (5) possessing marijuana with intent to distribute; and (6) receipt of firearms by a person who is not a citizen or national of the United States. See Second Superseding Indictment (Doc. #170).  Law enforcement officers discovered part of the methamphetamine, cocaine, marijuana and firearms while executing an arrest warrant for Hector Moreira, who was at defendant's residence on April 29, 2006.  This matter is before the Court on defendant's Motion To Suppress Evidence And Statements (Doc. #228) filed October 3, 2006.  On January 8, 2007, the Court held an evidentiary hearing.  For reasons set forth below, defendant's motion is overruled.

### Factual Background

Based on the testimony and exhibit at the hearing on defendant's motion, the Court finds the following facts:

In 2005, Drug Enforcement Administration (DEA) agent Jesse Valdez and other law enforcement personnel were investigating methamphetamine trafficking in Kansas City, Kansas. Several confidential sources stated that they had purchased methamphetamine from Hector Moreira.

On December 19, 2005, after a confidential informant had telephoned Moreira for instructions, he made a controlled purchase of methamphetamine from Hugo Lechuga. During the controlled purchase, officers observed Lechuga approach another individual (later identified as Kenet Del Cid-Rendon) who supplied the methamphetamine for the controlled purchase. After the controlled purchase, agents followed Del Cid-Rendon to a residence at 5117 Freeman in Kansas City, Kansas.

On January 10, 2006, a confidential source made a controlled purchase of methamphetamine from Moreira. After the controlled purchase, officers followed Moreira to the residence at 5117 Freeman. During the execution of a search warrant for that residence the following day, officers arrested Del Cid-Rendon but did not find Moreira.

On January 13, 2006, as part of a controlled purchase, a confidential informant called Moreira. Moreira instructed the informant to meet him at an auto parts store at 29th Street and State Avenue in Kansas City, Kansas. Shortly before the controlled purchase, Moreira was alerted as to the presence of law enforcement and fled in a vehicle which he wrecked a short distance away near Interstate 70. Officers found the wrecked vehicle, but were unable to locate Moreira. Officers later learned that Moreira knew someone who lived close to where he had wrecked the car, and that he was staying at that residence.

On February 1, 2006, a grand jury returned a sealed indictment which charged Moreira and others. The Court issued arrest warrants for Moreira and the other defendants.

In March of 2006, officers learned that Moreira was selling narcotics from residences in

- 2 -

Grandview, Missouri and Kansas City, Kansas. During a search of the residence in Grandview, officers discovered narcotics. Again, they could not locate Moreira.

On April 18, 2006, as part of an attempt to make a controlled purchase, a confidential informant called Moreira. Moreira instructed him to meet at an auto parts store at 18th Street and Central Avenue in Kansas City, Kansas. The informant made a controlled purchase from Moreira's cousin at that location. After the purchase, officers followed Moreira's cousin, who returned to a residence at 1814 Bunker Avenue, some six blocks north of the auto parts store.

On April 26, 2006, security personnel at Harrah's Casino in Kansas City, Missouri saw Moreira. They knew that Moreira had an outstanding arrest warrant, so they approached him and asked for identification. As Moreira handed them his brother's identification, he ran from the casino and was able to elude security personnel.

On April 29, 2006, the confidential informant who made the controlled purchase from Moreira's cousin on April 18 told officers that he had seen Moreira at a residence at 1814 Bunker Avenue in Kansas City, Kansas some three times in the past week – including the previous day, April 28.

Agent Valdez instructed other officers to conduct surveillance at 1814 Bunker. Agent Valdez contacted other law enforcement personnel to execute the outstanding arrest warrant for Moreira. Before Agent Valdez coordinated the arrest teams, he had the confidential informant contact Moreira to deliver money so that officers could verify that Moreira was in the residence at 1814 Bunker. The informant called Moreira about delivering the money. Moreira asked the informant if he needed anything else, but the informant said no. When the informant arrived at 1814 Bunker, Moreira was standing outside. After the informant delivered the money, Moreira went back inside the residence and the informant left the area.

- 3 -

Within minutes after the informant left, Agent Valdez and the various arrest teams arrived. Agent Valdez and another officer broke down the front door of the residence. Moreira immediately fled out the back door and officers caught him a short distance later in a gully. When Agent Valdez entered the residence, he saw defendant standing at the stove with a pot of methamphetamine and baggies nearby, and approximately one half kilogram of cocaine on the kitchen table.

Agent Valdez arrested defendant. Agent Valdez asked defendant in Spanish whether he knew English. After defendant said no, Agent Valdez advised defendant in Spanish that he was under arrest for possession of methamphetamine and cocaine. Agent Valdez gave defendant a written version of his <u>Miranda</u> rights in Spanish and allowed defendant to read along while Agent Valdez recited defendant's rights in Spanish. Defendant admitted that he was renting the residence and that the van outside belonged to him. Defendant knowingly and voluntarily gave Agent Valdez consent to search the residence and the van. When Agent Valdez asked defendant if he had a key to the residence, he said that he did but that Moreira also had a key and brought a lot of stuff to the house without his knowledge.

<u>Analysis</u>

Defendant argues that (1) police unlawfully entered his residence to arrest Moreira and (2) he did not voluntarily and intelligently waive his <u>Miranda</u> rights.

**I.     Forced Entry Into Residence**

Defendant argues that police unlawfully entered his residence to arrest Moreira. Law enforcement officers have limited authority based on an arrest warrant to enter a dwelling where the suspect resides. <u>See</u> <u>Payton v. New York</u>, 445 U.S. 573, 603 (1980). An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is

- 4 -

reason to believe the suspect is within.  Id.  Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home.  Steagald  v. United States, 451 U.S. 204, 214 n.7 (1981).  Absent exigent circumstances, however, an arrest warrant by itself does not authorize entry into the home of a third party.  Id. at 215.  Under Payton, officers entering a residence pursuant to an arrest warrant must have a reasonable belief the arrestee (1) lives in the residence and (2) is within the residence at the time of entry.  United States v. Gay, 240 F.3d 1222, 1226 (10th Cir.), cert. denied, 533 U.S. 939 (2001); Valdez v. McPheters, 172 F.3d 1220, 1224-25 (10th Cir. 1999).

A.      Reasonable Belief That Moreira Lived In The Residence

Officers need only an objectively reasonable belief that an arrestee lived at the residence.  See Gay, 240 F.3d at 1226; Valdez, 172 F.3d at 1225.  In addition, the arrestee need not live at the residence, so long as he "possesses common authority over, or some other significant relationship to, the residence entered by police."  Gay, 240 F.3d at 1226 (quoting Valdez, 172 F.3d at 1225).  Officers are well aware that people do not live in "individual, separate, hermetically sealed residences," but live with other people and often move from one residence to another.  Id. (quoting Valdez, 172 F.3d at 1225).

Here, officers had a reasonable belief that Moreira lived in the residence at 1814 Bunker: (1) a confidential informant told officers that he had seen Moreira at the residence on three occasions including the previous day, April 28, 2006 and (2) shortly after officers received the tip, they saw defendant and Moreira pull up to the residence in a maroon van and go inside the residence. Officers reasonably relied on the confidential source's tip because (1) some 11 days earlier, the same informant participated in a controlled purchase arranged by Moreira at a nearby auto parts store; (2) Moreira's cousin delivered the

narcotics for the controlled purchase and returned to 1814 Bunker Avenue where he entered the residence; (3) officers observed defendant and Moreira pull up in a maroon van at the residence and go inside the residence at 5:00 p.m. on April 29, 2006; (4) the telephone call on April 29, 2006 between the informant and Moreira suggested that Moreira had sold narcotics to the informant on prior occasions; and (5) the meeting between the informant and Moreira on April 29, 2006 confirmed that Moreira was at the residence.

Defendant argues that officers could not form a reasonable belief that Moreira was at the residence based solely on the informant's tip.  The informant told officers the precise location of the residence based on his personal visits to the location.  That information was verified in large part by the informant's telephone call to Moreira and the subsequent meeting with Moreira at the residence.  See Illinois v. Gates, 462 U.S. 213, 230, 234 (1983) (in probable cause context; even with some doubt as to informant's motives, his basis of knowledge is one way in which information from informant can be validated; informant's detailed description of alleged wrongdoing observed first-hand entitles tip to greater weight than might otherwise be the case).  Officers apparently had face-to-face discussions with the confidential informant and he presumably could be held accountable if the tip was fabricated.  See Florida v. J.L., 529 U.S. 266, 270 (2000) (reputation of known informant can be assessed and informant can be held responsible if allegations turn out to be fabricated) (citation omitted).  Given the informant's basis of knowledge, the fact that officers knew of his identity and the significant corroboration of the tip, officers had an objectively reasonable belief that Moreira lived at the Bunker Avenue residence on April 29, 2006.

B.      Reasonable Belief That Moreira Was Within Residence

Officers need only an objectively reasonable belief that Moreira was within the residence at the time

- 6 -

of entry.  Gay, 240 F.3d at 1226; Valdez, 172 F.3d at 1224-25.  Here, this standard is easily satisfied.

Within 45 minutes before officers entered the residence, they saw Moreira enter the residence and also saw

him go outside for a short period to meet the informant.  Officers kept the residence under surveillance and

did not see Moreira leave the residence.  Under the totality of the circumstances, the officers had an

objectively reasonable belief that Moreira remained within the residence at the time of entry.

Officers had a reasonable belief that Moreira (1) lived in the residence at 1814 Bunker and (2) was

within the residence at the time of entry.  Therefore, as to the officers' entry into Perez-Jacome's residence

on April 29, 2006, the Court overrules defendant's motion to suppress

## II.    Waiver Of Miranda Rights

Defendant argues that after officers arrested him, he did not voluntarily and intelligently waive his

rights under Miranda v. Arizona, 384 U.S. 436 (1966).  To be valid, a defendant must voluntarily,

knowingly and intelligently waive his rights.  Id. at 444.  For a waiver to be involuntary, the Court must find

that police action was coercive.  See Moran v. Burbine, 475 U.S. 412, 421 (1986) (relinquishment of

Miranda right must have been voluntary in sense that it was product of free and deliberate choice rather

than intimidation, coercion or deception).  A waiver is knowing and intelligent only if it was made with "a

full awareness of both the nature of the right being abandoned and the consequences of the decision to

abandon it."  United States v. Minard, No. 05-6089, 2006 WL 3598396, at *2 (10th Cir. Dec. 12, 2006)

(quoting Moran, 475 U.S. at 421).  A defendant need not, however, understand all the consequences of

the waiver.  Id. (citing Colorado v. Spring, 479 U.S. 564, 574 (1987)).  He need only understand his right

to remain silent or have his statements used against him.  Id.  The government bears the burden of proving

that defendant's waiver of Miranda rights was knowing and voluntary.  United States v. Nelson, 450 F.3d

1201, 1210-11 (10th Cir. 2006).

Here, Agent Valdez asked defendant in Spanish whether he knew English. After defendant said no, Agent Valdez advised defendant in Spanish that he was under arrest for possession of methamphetamine and cocaine. Agent Valdez gave defendant a written version of his Miranda rights in Spanish and allowed defendant to read along while Agent Valdez recited defendant's rights in Spanish. Defendant's waiver of rights was knowing and voluntary. Agent Valdez did not attempt to intimidate, coerce or deceive defendant. The Court therefore overrules Perez-Jacome's motion as to the waiver of his Miranda rights.[1]

IT IS THEREFORE ORDERED that defendant's Motion To Suppress Evidence And Statements (Doc. #228) filed October 3, 2006 be and hereby is OVERRULED.

Dated this 9th day of February, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[1]    Defendant does not directly challenge the voluntariness of his consent to search the house and his van. In any event, based on the evidence at the hearing on defendant's motion, the Court finds that defendant knowingly and voluntarily gave his consent to search the house and van.

- 8 -